FILED
AUG 09 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BARBARA J. HICKS,

           Plaintiff,                        CV-09-3047-PK

v.                                          OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

           Defendant.

PAPAK, Magistrate Judge:

### INTRODUCTION

Plaintiff, Barbara Hicks, appeals the Commissioner's decision denying her application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). For the following reasons, the Commissioner's decision is affirmed.

1 - OPINION AND ORDER

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Hicks's ability to perform basic work activities limited by the residual effects of three laminectomy surgeries in the remote past. Admin. R. 26. He found Hicks did not have any impairment or combination of impairments equivalent in severity to the presumptively disabling conditions listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Admin. R. 27.

The ALJ made alternative findings in assessing Hicks's residual functional capacity ("RFC"), and elicited testimony from a vocational expert ("VE") based on the alternative findings. First, the ALJ asked the VE to assume a hypothetical worker with the RFC to perform work at the medium level of exertion, but without the ability to climb ladders, ropes, or scaffolds. *Id.* at 27. The VE testified that such a person would be able to perform the requirements of occupations such as assembler of small products, rental clerk, and office helper. In the alternative, the ALJ asked the VE to assume a hypothetical person with the RFC to perform work at the light level of exertion, with the ability to perform handling and fingering only occasionally, and without the ability to climb ladders, ropes, or scaffolds. The VE testified that such a person could work as a rental clerk, dispatcher, and information clerk. The ALJ concluded that Hicks is not disabled within the meaning of the Social Security Act. *Id.* at 31-32.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

2 - OPINION AND ORDER

## DISCUSSION

### I. Claims of Error

Hicks contends the ALJ failed to assess her RFC accurately because he discounted the credibility of her subjective statements and gave insufficient weight to the opinions of her primary care provider, James Nordal, M.D., cardiologist Douglas Burwell, M.D., and rehabilitation specialist Peter Grant, M.D. She argues the ALJ replaced the opinions of these treating sources with independent medical findings of his own. She contends the ALJ failed to consider the combined effects of all her impairments when determining that her condition is not equivalent to any in the Listing of Impairments. Hicks contends the ALJ elicited testimony from the VE based on hypothetical assumptions that did not accurately reflect her true functional limitations.

### II. Credibility Determination

Hicks alleged disability beginning September 12, 2005, due to a bad back and depression. Admin. R. 86-87. Previously, she had a motor vehicle accident in 1993 which resulted in laminectomy surgeries in 1993, 1994, and 1996. She then had minimal discomfort until suffering a slip-and-fall accident at work in November 2004. In April 2005, she returned to work in her usual capacity as an executive chef. *Id.* at 203-09. She then suffered another occupational injury to her lower back while lifting boxes on September 12, 2005. She stopped working shortly thereafter. *Id.* at 330.

Hicks testified that she has neck pain radiating to her hands, causing cramping and an inability to distinguish hot from cold with her hands. She claimed lower back pain shooting down both legs with numbness and tingling. She said her legs are weak and sometimes give out and she must use a cane. She said she has a hole in the center of her heart causing abnormal beating. This

3 - OPINION AND ORDER

causes nausea and sometimes she passes out. Hicks said she had depression and confusion and her short-term memory was gone. She said her combined impairments required her to lie down part of the day. *Id.* at 534-35, 537, 539-41. Hicks also provided a written statement describing very limited activities of daily living. *Id.* at 521-22. The ALJ found Hicks not fully credible. *Id.* at 30.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986). The threshold, therefore, requires objective evidence of an underlying medical condition that could produce the claimant's subjective symptoms, and the absence of affirmative evidence of malingering.

If this two step threshold is met, an ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283. The Commissioner challenges the viability of this requirement on the well-reasoned basis that the Social Security Act does not require clear and convincing reasons to support the Commissioner's factual findings; instead, it requires the courts to uphold findings of fact that are supported by substantial evidence. 42 U.S.C. § 405(g). The Commissioner argues the courts are not authorized to alter this statutory language. Nevertheless, the decisions of the Court of Appeals for the Ninth Circuit continue to recognize a duty on the part of the ALJ to explain his credibility determination with clear and convincing reasons. *Carmickle*, 533 F.3d at 1160; *Smolen*, 80 F.3d at 1283. Until the Court of Appeals revisits the issue, this court remains bound by those decisions.

In assessing credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work history, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *5. An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ considered proper factors here, and in doing so, identified affirmative evidence of malingering and substantial evidence supporting clear and convincing reasons for discounting Hicks's credibility. The ALJ found Hicks's subjective complaints unsupported by the medical evidence, disproportionate to the record as a whole, and tainted by indications that Hicks overstated her limitations for secondary gain. Admin. R. 28-30.

As a pre-disability baseline, in June 2005, Hicks had post-operative changes from her laminectomy surgeries and marked but stable degenerative disk disease at L4-5. Hicks had full motor strength without any indication of radiculopathy, atrophy, or loss of muscle tone. There was no medical evidence of functional loss attributable to her most recent work injury and no restrictions on her ability to perform work-related activities. *Id.* at 28, 203-09. In contrast with this absence of any objective basis for loss of strength, an examining physician noted Hicks demonstrated diffuse mild collapsing patterns of giveway weakness. *Id.* at 203-09.

At the onset of disability, in September 2005, Hicks aggravated her back while lifting boxes at work and reported bilateral lumbosacral pain with right sided radiculopathy symptoms in the right gluteal and hip area. Dr. Nordal found diffuse tenderness to palpation in the lumbar region and some giveway weakness on the left. Hicks reported she was unable to perform even light duty work, but

Dr. Nordal noted that she ambulated normally and had no peripheral motor deficits. *Id.* at 328-31. In October 2005, Hicks had an MRI study of the lumbar spine. This showed post-operative changes consistent with her laminectomies and degeneration at L4-5 which was marked, but unchanged from earlier studies preceding the onset of disability. She had broad minimal disk bulging with mild degeneration at the L4-5 foramen and at L5-S1. *Id.* at 371. Hicks saw Dr. Nordal frequently until her workers compensation claim was settled in July 2006.

In January 2006, Hicks ended a course of physical therapy without any reported improvement in pain or mobility. *Id.* at 218, 476. George Johnston, D.O., evaluated Hicks for subjective claims of lumbar pain with numbness, parasthesias, and weakness in both legs. Dr. Johnston found Hicks's gait and gross motor function normal. He noted giveway weakness in the legs, but Hicks had normal muscle bulk and tone. *Id.* at 268-69. Electromyography studies were normal, without any electrodiagnostic indication of lumbosacral radiculopathy or any other lower limb nerve problem to account for Hicks's subjective symptoms of numbness, parasthesias, and giveway weakness. *Id.* at 270. Hicks obtained a referral to see Dr. Greenberg for epidural steroid injections. Dr. Greenberg reported that Hicks was magnifying symptoms and had somatization associated with depression. He prescribed antidepressant medications. *Id.* at 308.

In April 2006, Dr. Nordal reviewed and disagreed with an independent medical examiner's opinion that Hicks had returned to her baseline condition preexisting her September 2005 work injury. Before the work injury, Hicks had not been bothered by the degeneration in her lumbar spine and had been able to perform work without discomfort. Dr. Nordal believed Hicks's subjective claim that she remained unable to return to her previous level of function. *Id.* at 312.

In July 2006, Hicks settled her workers compensation claim. *Id.* at 303. At the same time, she self discontinued prescribed medications and began to see Dr. Nordal at sporadic intervals with several months between visits. In addition, the focus of her visits with Dr. Nordal changed from her back condition to other matters, including heart palpitations, right shoulder pain from a fall; and marijuana card renewal. *Id.* at 300-02, 438-41.

The ALJ believed the absence of objective findings to support Hicks's subjective symptoms, the repeated findings of giveway weakness without an objective basis, Dr. Greenberg's opinion that Hicks was magnifying her symptoms, and the abruptly diminished symptoms and treatment at the same time her workers compensation claim settled, all suggested Hicks was malingering to avoid work and obtain workers compensation benefits. *Id.* at 29.

The ALJ also identified inconsistencies in Hicks's subjective reports. Hicks told Dr. Johnston that she had a lumbosacral corset which she used from time to time. *Id.* at 268. She told Dr. Nordal she used the brace routinely during the day and did not think she could function without it; she requested a note to substantiate her dependence on the brace. *Id.* at 308. Hicks testified that Dr. Nordal prescribed a cane to help her with leg weakness resulting from bilateral radiculopathy. *Id.* at 534-35. In fact, the record reflects no objective indication of radiculopathy and Hicks acquired the cane without Dr. Nordal's knowledge and asked him for the prescription after the fact to substantiate her need for a cane. *Id.* at 441.

In March 2007, Hicks's reported falling and injuring her ankle, shoulder, and head. A CT scan of the head was negative for brain injury. *Id.* at 301. In May 2007, Hicks again reported a fall, causing her arm to pop out of the shoulder socket. Dr. Nordal noted that Hicks was not apprehensive at all with a shoulder manipulation that should have made her very apprehensive if she had

7 - OPINION AND ORDER

dislocated her shoulder as she claimed. *Id.* at 300. The ALJ drew an adverse inference as to Hicks's credibility from these reports because her shoulder symptoms did not appear to be candid and Hicks did not mention any aggravation of the low back symptoms that had been the basis of her earlier workers compensation claims and were significant symptoms alleged later in her testimony.

Hicks reported that these frequent falling episodes resulted from her heart condition. In her testimony, however, she admitted that her palpitations had been present for at least ten years, long before the alleged onset of disability. *Id.* at 541. A stress echocardiogram evaluation indicated only a possible remote small myocardial infarction. *Id.* at 432. Dr. Burwell advised her to avoid caffeine and improve her conditioning with daily walks. *Id.* This evaluation supports an adverse inference as to the credibility of Hicks's claim of a debilitating heart condition that precludes her from activity.

In summary, the ALJ considered all the available evidence relating to the proper factors for assessing credibility. Taken as a whole, his explanation is clear and convincing and his factual findings are supported by inferences reasonably drawn from substantial evidence in the record. Hicks urges the court to accept a different interpretation of the evidence. Even if the evidence could rationally be interpreted in a manner more favorable to Hicks, the court must defer to the Commissioner's rational findings of fact. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995). The ALJ's decision provides an adequate basis for the court to conclude that he did not discredit Hicks's subjective statements arbitrarily. *Orteza,* 50 F.3d at 750. Accordingly, the credibility determination is upheld.

### III. Medical Source Statements

Hicks contends the ALJ improperly rejected the opinions of Drs. Nordal, Burwell, and Grant, and substituted his own independent medical conclusions in their place. An ALJ can reject a treating

physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.*

As described previously, Dr. Nordal was Hicks's primary care provider at all relevant times. Hicks had appointments with him at least once per month between the alleged onset of disability in September 2005, and the settlement of her workers' compensation claim in July 2006. Hicks argues that Dr. Nordal's progress notes reflect his opinion that she was unable to return to work during this period due to intractable back pain. Indeed, Dr. Nordal declined to release Hicks to work at her regular appointments during this period. Admin. R. 305.

Dr. Nordal did not identify specific functional limitations resulting from Hicks's chronic back pain. He did not identify specific work related activities she could not perform. Accordingly, the ALJ's RFC assessment did not directly contradict or reject any part of Dr. Nordal's findings and conclusions. The RFC assessment is inconsistent only with the absence of a release for Hicks to return to work during the 9-month period between the alleged onset of disability and the settlement of her worker's compensation claim.

The question of whether a claimant is employable is not a medical opinion about specific functional limitations, but an administrative finding that the regulations reserve to the Commissioner. Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician. 20 C.F.R. § 416.927(e). The ALJ may not

9 - OPINION AND ORDER

ignore such opinions, however. *Reddick v. Chater*, 157 F.3d, 715, 725 (9th Cir. 1998); SSR 96-5p, 1996 WL 374183, *2-3.

Here the ALJ did not ignore Dr. Nordal. He accepted Dr. Nordal's objective and clinical findings, which were also consistent with the findings and conclusions of the reviewing medical experts who evaluated all the medical evidence in the record. Admin. R. 274-82. The ALJ did not accept the suggestion that Hicks could not return to work because it was based on Hick's subjective statements and was disproportionate to the objective evidence in the record. *Id.* at 29-30. An ALJ may reject a treating physician's opinion that is premised primarily on subjective complaints which the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). He need not accept a medical opinion that is unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). Accordingly, the ALJ did not improperly reject Dr. Nordal's opinion.

Dr. Burwell saw Hicks in June 2004 for an evaluation of heart palpitations which had persisted at that time for at least 11 years. Admin. R. 165. She was asymptomatic during the evaluation but reported a history of frequent palpitations. After a thorough evaluation, including a stress echocardiogram, Dr. Burwell found two abnormalities of diminished muscle movement involving a small amount of the myocardium. He recommended that Hicks walk regularly to improve cardiac conditioning. He did not feel she needed to be reevaluated for a year. *Id.* at 161-62. This evaluation was long before the alleged onset of disability, and Dr. Burwell did not indicate any work-related restrictions.

Dr. Burwell saw Hicks again in August 2007 for subjective complaints of erratic spells of elevated heart rate. Her physical examination was generally normal. An electrocardiogram showed

10 - OPINION AND ORDER

she had a somewhat slowed heart rate. Dr. Burwell again recommended very conservative treatment, including regular exercise to improve cardiac conditioning and abstinence from caffeine. *Id.* at 432. In December 2007, Hicks reported ongoing heart racing episodes. Dr. Burwell found no symptoms or abnormalities on physical examination. Hicks provided a subjective log of palpitation episodes. Dr. Burwell ordered a stress echocardiogram and a King of Hearts event monitor to log the episodes. He continued to recommend exercise and abstinence from caffeine and also asked Hicks to taper off her analgesic and sedative medications. *Id.* at 485-86.

In March 2008, Hicks reported that the episodes of heart palpitations were less frequent and shorter in duration since she stopped using caffeine. The results of her stress echocardiogram were excellent, indicating no structural heart disease. The event monitor showed only two episodes of elevated heart rate during the 30-day monitoring period. Her physical examination revealed no abnormalities. Dr. Burwell opined that Hicks's risk of severe cardiac arrhythmia was very low. He continued conservative treatment, recommending exercise, abstinence from caffeine, and low dose beta blocking medication as needed for infrequent episodes of palpitations. *Id.* at 524-27.

Dr. Burwell did not produce an opinion about Hicks's functional capacity or identify any work-related activities she should avoid. Indeed, his opinion was consistently that she should increase activity to improve her cardiac conditioning. Nothing in Dr. Burwell's progress notes or reports suggests Hicks had functional limitations inconsistent with the ALJ's RFC assessment. Accordingly, the ALJ did not reject or discount Dr. Burwell's opinion and had no obligation to explain his reasons for doing so.

Dr. Grant is a physical medicine and rehabilitation specialist who examined Hicks in October 2007. In his physical examination, Dr. Grant noted Hicks was tender to palpation and had associated

muscular rigidity. Her range of motion in the cervical spine was mildly reduced. She had no muscle atrophy in the upper extremities and her gait, station, and coordination were normal. Electrodiagnostic studies revealed mild to moderate carpal tunnel syndrome on both sides, but there was no indication of cervical radiculopathy or other abnormalities. Dr. Grant prescribed wrist splints to treat the carpal tunnel syndrome. *Id.* at 443-48.

Dr. Grant did not offer an opinion about Hicks's functional capacity or identify any work-related activities she should avoid. He treated Hicks conservatively and there is no evidence that the treatment was not effective. Dr. Grant's report does not suggest that Hicks had functional limitations inconsistent with the ALJ's RFC assessment. Indeed, the ALJ accommodated any reasonable inference of functional deficits from mild to moderate carpal tunnel syndrome by including a limitation to occasional fingering and handling in his alternative RFC assessment. In summary, the ALJ did not reject or discount Dr. Grant's opinion and was not required to provide an explanation for doing so.

## IV. Listing of Impairments

The regulations apply a conclusive presumption that the claimant is disabled if the ALJ determines that the claimant has impairments equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S at 140-41; 20 C.F.R. § 416.920(d). The criteria necessary to establish the presumptively disabling impairments are enumerated in the Listing of Impairments. The claimant has the burden of proving that she meets or equals the criteria for a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); 20 C.F.R. § 416.926.

Hicks contends the ALJ did not properly evaluate the combined effect of her multiple impairments in determining that her condition was not equivalent in severity to any of those in the Listing of Impairments. The ALJ considered all of the evidence Hicks presented with respect to all of her alleged impairments and compared the findings to the severity criteria for listed impairments involving the musculoskeletal, respiratory, and neurological body systems. Admin. R. 27. An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to the criteria for a specific listing unless the claimant produces evidence in an effort to establish equivalence with that listing. *Burch*, 400 F.3d at 683. Hicks did not offer any theory of how the evidence she produced supports equivalence with any specific listing. Accordingly, the ALJ's determination that Hicks failed to prove that her impairments met or equaled the criteria for a listed impairment was not erroneous. *Burch*, 400 F.3d at 683; *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

## V.  Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S at 141-42; 20 C.F.R. § 416.920(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F.3d at 1043.

Hicks objects to the vocational testimony because the ALJ did not include in the hypothetical assumptions limitations identified by Dr. Nordal or claimed in her subjective statements. The ALJ properly discounted Dr. Nordal's opinion that Hicks could not return to work and properly found Hicks's subjective statements not fully credible for reasons described previously. He was not

required to incorporate limitations based on properly discounted evidence into the hypothetical assumptions with which he elicited testimony from the VE. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Accordingly, the vocational evidence provided substantial evidence from which the ALJ could properly conclude that jobs exist in the national economy that a person with Hicks's RFC could perform.

## ORDER

For the foregoing reasons, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 9th day of August, 2010.

_____
Paul Papak
United States Magistrate Judge